UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTINIQUE STOUDEMIRE,

        Plaintiff,

v.

MICHIGAN DEPARTMENT OF CORRECTIONS, a public entity, PATRICIA CARUSO, Director of the Michigan Department of Corrections, GEORGE J. PRAMSTALLER, D.O., MDOC Chief Medical Officer, RICHARD RUSSELL, MDOC Bureau of Health Care Administrator, SUSAN DAVIS, Warden, Huron Valley Women's Facility, MUHAMMAD MUSTAFA, M.D., UYEN THAI-BUDZINSKI, M.D., Nursing Staff JANET ADAMICK, R.N., ANITA M. LEECH, FRANK WINTERSTEEN, Corrections Officer ARRIEL N. DUNAGAN, in their Official and Individual capacities, jointly and severally,

        Defendants.

Case No. 07-15387
Honorable Julian Abele Cook, Jr.

## ORDER

The Plaintiff, a double amputee and former prisoner at the Huron Valley Women's Correctional Facility ("Huron Valley") in Ypsilanti, Michigan, brought this lawsuit against the Michigan Department of Corrections ("MDOC") and various MDOC-associated officers and healthcare professionals.[1] The crux of her claims, premised under 42 U.S.C. § 1983, 42 U.S.C. § 12132, and Mich. Comp. Laws. § 330.1722, pertains to the alleged failure by the Defendants to provide adequate health care and accommodations for disabled individuals. The Plaintiff also asserts that she was subjected to an unconstitutional strip search in violation of the Fourth

---

[1] The Defendants in this case have been identified by the Plaintiff as Patricia Caruso, George Pramstaller, Richard Russell, Susan Davis, Janet Adamick, Anita Leech, Frank Wintersteen and Arriel Dunagan (hereinafter identified as the "MDOC Defendants"), along with two independent contracting physicians, Dr. Muhammad Mustafa and Dr. Uyen Thai-Budzinski.

Amendment.

On March 31, 2011, the Court entered an order which denied, in part, the MDOC Defendants' motions to dismiss and for the entry of a summary judgment in connection with their qualified immunity defenses relating to two of the Plaintiff's claims.[2] An appeal by the MDOC Defendants followed. On January 31, 2013, the Sixth Circuit partially vacated the March 31, 2011 order, and directed the Court to evaluate the following two issues on remand; namely, (1) whether Susan Davis, ("Davis") the warden of Huron Valley during all times that are relevant to this action, is entitled to qualified immunity with respect to the Plaintiff's claim under 42 U.S.C. § 1983, and (2) if Davis or Arriel Dunagan ("Dunagan"), the officer who was responsible for conducting the now-challenged strip search, are shielded from liability under state law pursuant to Michigan's governmental immunity doctrine. *Stoudemire v. Michigan Dep't Of Corr.,* 705 F.3d 560 (6th Cir. 2013).

Consistent with the directive from the Sixth Circuit, on September 25, 2013 the Court granted the Plaintiff's request to reopen the record to consider additional evidence relevant to the issues on remand. (ECF No. 134). The Court further ordered both parties to file supplemental briefs that would detail their positions in light of the Sixth Circuit's opinion and the expanded record. *Id.* In her response to the Defendants' supplemental brief (ECF No. 137), the Plaintiff opted "not [to] object to the Defendants' motion insofar as it seeks dismissal of the state law claims against both Defendants." *Id.* at 8. Thus, the Court grants the Defendants' motion for dismissal as it relates to

---

[2]As noted in an earlier opinion of the Court, the Plaintiff did not challenge the request by the MDOC Defendants to dismiss Counts I and IV against the Defendants (Caruso, Russell, Pramstaller, Wintersteen, Adamick and Leach). As a result, the Court granted the MDOC Defendants' motion for dismissal with regard to Counts I and IV only as it related to the above-listed individuals.

the now-pending state law claims against Davis and Dunagan. Accordingly, the sole issue before the Court is whether qualified immunity protects Davis from the Plaintiff's § 1983 claim.

I.

The events which gave rise to this litigation have been thoroughly outlined in the order of March 31, 2011. (ECF No. 109). The crux of the Plaintiff's claims revolves around Davis' alleged failure, in her official capacity as the warden of Huron Valley, to provide proper accommodations for a double amputee who was adversely affected by Methicillin-Resistant Staphylococcus Aureas ("MRSA"). According to the Plaintiff, she acquired MRSA following the amputation of her left leg. As a result of her condition, her housing assignment at Huron Valley was changed from the infirmary to the segregation unit. Pointing to the absence of handicap facilities within this unit, the Plaintiff alleges that she was unable to safely transfer from her wheelchair to the bed or toilet, and was allowed only one shower during the two weeks while housed in segregation. (Stoudemire Decl., Ex. 1 at ¶ 13-22, ECF No. 89-1).

In addition to the obvious problems created by this housing designation, the Plaintiff also contends that there was no electrical mechanism which would enable her to seek emergency assistance from the penal staff for help with "daily dressing changes for the actively-draining infected stump of her leg." (Plf's Supp. Resp., 3, ECF No. 135). Moreover, the Plaintiff had difficulty getting to the toilet on time and allegedly defecated on herself on at least one occasion. (Stoudemire Decl., ¶ 21). Finally, after complaining of shortness of breath and chest pains on February 5, 2006, the Plaintiff avers that she lost consciousness on the following day which resulted in her admittance to the hospital for emergency treatment. *Id.* at ¶ 24.

The parties sharply disagree over Davis' role, if any, in the decision to house the Plaintiff

3

in segregation, as well as her knowledge of the Plaintiff's physical limitations. According to the Plaintiff, MDOC policy required the healthcare staff at Huron Valley to alert Davis of any prisoner with a documented culture positive for MRSA. (Russell Memo, Ex. 28, ECF No. 89-28). Once armed with this information, Davis was thereafter obligated to immediately initiate the prescribed medical quarantine process, which required the "patient [to be] housed without contact with other prisoners . . . . " *Id.* Although Davis purportedly had the authority to "transfer [the Plaintiff] to another facility due to the unavailability of an appropriate bed", she did not opt to exercise this power. *Id.* Instead, according to her own account, she relied on the determination by the Bureau of Health Care Services ("BHCS") that the Plaintiff did not need any special medical accommodations, thus warranting her designation to the segregated housing unit. (Davis Dep., Ex. A at 40, ECF No. 131-2).

Davis, on the other hand, maintains that she had no personal knowledge of the Plaintiff's medical needs, and was thus not responsible for the seemingly ill-advised decision to place her in segregated housing. Even assuming that the Plaintiff did have a serious medical condition which would warrant special treatment, Davis argues that she acted reasonably under the circumstances by relying on her medical staff to determine the need for any special accommodations. Finally, Davis points out that, during the course of her rounds, she "would check the logbook to make sure that medical professionals had been through at least daily to see [the Plaintiff] for however often [her] particular need was." *Id.* at 26. As such, Davis maintains that she is entitled to qualified immunity with respect to the Plaintiff's § 1983 claim.

## II.

The Defendant has moved for dismissal under Fed. R. Civ. P. 12(b)(6) and 56(c). Pursuant

4

to Rule 12(d), "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." In the original order which denied in part the Defendants' motion, the Court considered a plethora of evidence outside the pleadings. As such, the issues on remand will be analyzed under the summary judgment framework.

The purpose of the summary judgment rule, as reflected by Federal Rule of Civil Procedure 56, "is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The entry of a summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties.'" *Aqua Grp., LLC v. Fed. Ins. Co.*, 620 F.Supp.2d 816, 819 (E.D. Mich. 2009) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). In order for a dispute to be genuine, it must contain evidence upon which a trier of the facts could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). When assessing a request for the entry of a summary judgment, a court "must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477

U.S. at 322.

Thus, the moving party has the initial obligation of identifying those portions of the record that demonstrate the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *see also Anderson*, 477 U.S. at 256. The presence or the absence of a genuinely disputed material fact must be established by (1) a specific reference to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or (2) a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).

### III.

The Plaintiff cites to 42 U.S.C. § 1983 as a basis for her contention that Davis had violated her Eighth Amendment right to be free from cruel and unusual punishment. Davis disagrees. In order for the Plaintiff to prevail, she "must demonstrate a genuine issue of [a] material fact as to the following 'two elements: (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law.'" *Miller v. Calhoun County,* 408 F.3d 803, 812 (6th Cir. 2005).

Here, there appears to be no disagreement that Davis was acting under the color of a state law during all of the times about which the Plaintiff has complained. Thus, the remaining question is whether Davis deprived this Plaintiff of any right that is protected by federal law.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Phillips v. Roane Cnty.,* 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In resolving an official's governmental immunity claim, the Court is urged to examine whether (1) the facts as alleged demonstrate the violation of a constitutional right, and (2) the right at issue was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 816, 172 L. Ed. 2d 565 (2009). The Court has discretion to decide which of the two prongs should be evaluated first. *Id.* at 236. "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Moldowan v. City of Warren,* 578 F.3d 351, 375 (6th Cir. 2009).

With respect to the first layer of the qualified immunity test, the Plaintiff alleges that Davis violated her Eighth Amendment right to be free from cruel and unusual punishment by (1) confining her to a cell that was not properly equipped for a double amputee, and (2) prevented her from receiving medical treatment in a timely fashion.

The Eighth Amendment prohibits prison officials from "unnecessarily and wantonly inflicting pain on an inmate by acting with 'deliberate indifference' toward [her] serious medical needs.'" *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). A constitutional claim for denial of medical care under the Eighth Amendment has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The objective component

7

requires the existence of a "sufficiently serious" medical need. *Id.* at 834. As the Supreme Court explained in *Farmer,* "the inmate must show that [she] is incarcerated under conditions posing a substantial risk of serious harm." *Id.* The subjective element requires "an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.'" *Blackmore,* 390 F.3d at 895. This determination should be made "in light of the prison authorities' current attitudes and conduct.'" *Id.* As such, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837.

Here, there is no question that the Plaintiff's medical needs were objectively serious. As the Sixth Circuit stated in *Blackmore,* "a medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" 390 F.3d at 897 (emphasis in original). Notwithstanding the Plaintiff's status as a double amputee with no motor function below her knees, she was assigned to the segregated housing unit to prevent the spread of MRSA - a serious medical condition that was allegedly acquired following the amputation of her left leg. It is well understood that MRSA presents serious risks to the carrier and "can be a source of community acquired infections." (Russell Memo, Ex. 28 at 6023, ECF No. 89-28); *See Nelson v. Putnam Cnty. Justice Ctr.*, 2:13-CV-00029, 2013 WL 1623686, *3 (M.D. Tenn. Apr. 15, 2013) ("[T]he [c]ourt finds that a MRSA infection can pose an objectively serious medical condition . . . . ").

Likewise, there can be little disagreement that the conditions of the Plaintiff's confinement in a segregated prison cell fell short of the mark articulated in *Farmer.* Indeed, not only was her cell

8

ill-equipped to house a double amputee, there was no mechanism for an inmate such as the Plaintiff to alert the penal staff of those pertinent issues related to her MRSA infection. This fact is particularly alarming, especially when the following factors relating to this inmate are considered; namely, (1) she was released from the University of Michigan Hospital following her third amputation just hours before being placed in segregation, (2) the primary reason which apparently motivated the change in her housing assignment (from the infirmary to the segregation unit) was her MRSA infection, and (3) the MDOC's internal memorandum clearly stated that its facilities must take "a proactive, more aggressive approach to MRSA infection[s] . . . . " (Russell Memo, at 6023). In summary, the Court finds that the conditions of confinement created a significant risk of serious harm to the Plaintiff during the times that are relevant to this controversy.

Regarding the subjective element of an Eighth Amendment claim, whether Davis was deliberately indifferent to the Plaintiff's needs, "is a question of fact subject to determination in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer,* 511 U.S. 825, 826. Davis' central argument on this point is that she "acted reasonably by relying on medical staff to care for prisoners' medical needs", and had no personal knowledge of the risk posed to the Plaintiff. (Def. Supp. Brf., 2, ECF No.136). However, the proper inquiry is not whether Davis acted reasonably, but rather whether she was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed] . . . ." *Blackmore,* 390 F.3d at 896.

A review of the record in this matter supports the notion that Davis was deliberately indifferent to the conditions of the Plaintiff's confinement while in quarantine. First and foremost, Davis acknowledged that Huron Valley's segregation unit lacked handicap accessible cells during

9

all times relevant to this case. (Davis Dep., Ex. A at 24, ECF No. 131-2). Furthermore, when asked what, if anything, she recalled about the Plaintiff, Davis replied, "[j]ust the fact that, you know, she was a double amputee." *Id.* at 47. Finally, Davis testified that she "probably was aware at the time" that the Plaintiff was assigned to the segregation unit following her MRSA infection.[3] *Id.* at 26. This admission is buttressed by Davis' later testimony that she made daily rounds to ensure that the medical needs of those physically handicapped individuals who were quarantined in segregation units were adequately addressed. *Id.* Thus, the record herein suggests that Davis had reason to know that the Plaintiff–a double amputee recovering from MRSA–was housed in a cell without a trapeze, grab bars, or a commode chair, and had a very limited means of alerting prison officials if additional medical attention was necessary.

Viewing these facts in a light most favorable to the Plaintiff, the Court concludes that a reasonable jury could find that Davis was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed] and [she] ignored that risk." *Blackmore,* 390 F.3d at 896.

Finally, the constitutional right at issue here is the right to be free from cruel and unusual punishment while in confinement. In evaluating whether a constitutional right was clearly established, "[t]he key determination is whether a defendant moving for summary judgment on qualified immunity grounds was on notice that [her] alleged actions were unconstitutional." *Grawey v. Drury,* 567 F.3d 302, 313 (6th Cir. 2009). In *Estelle v. Gamble,* 429 U.S. 97, 104-05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), the Supreme Court held that "deliberate indifference to serious

---

[3]Moreover, MDOC's own internal memorandum requires Huron Valley's Bureau of Health Care Services to "notify the [w]arden/designee of each confirmed [MRSA] case to initiate the quarantine." (Russell Memo at 6022)

10

medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'" For the reasons stated above, the Court finds that the Plaintiff's constitutional right to be free from cruel and unusual punishment was clearly established in this case. As such, the Court denies the Defendants' motion for summary judgment with respect to Davis' claim of qualified immunity.

IV.

Accordingly, for the reasons that have been set forth above, the Court grants the Defendants' motion for summary judgment (ECF No. 69) with respect to the state law claims against Davis and Dunagan, and denies their request as it pertains to Davis' claim of qualified immunity from the Plaintiff's § 1983 claim.

IT IS SO ORDERED.

Date: May 15, 2014                                  s/Julian Abele Cook, Jr.
                                                    JULIAN ABELE COOK, JR.
                                                    U.S. District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on May 15, 2014.

                                                    s/ Kay Doaks
                                                    Case Manager